**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**KANSAS CITY-LEAVENWORTH DIVISION**

| | |
|---|---|
| **MADELINE PETERSON** and **KURT POWER**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**THE TRUSTEES OF BAKER UNIVERSITY**,<br><br>Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION PETITION

Plaintiffs, Madeline Peterson and Kurt Power ("Plaintiffs"), on behalf of themselves and all others similarly situated, states as follows for their class action complaint against Defendant, The Trustees of Baker University ("Baker" or "Defendant"):

## INTRODUCTION

1. This class action arises from Defendant's failure to protect highly sensitive data.

2. Defendant is a private university based in Kansas offering over 50 programs including bachelor's, master's and doctoral degrees and certificates.[1]

3. As such, Defendant collects stores a litany of highly sensitive personal identifiable information ("Private Information") and protected health information ("PHI") (collectively "Private Information") about its current and former students and employees. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach

4. In December 2024, Defendant discovered it had lost control over its computer

[1] BAKER UNIVERSITY, https://www.bakeru.edu/ (last visited December 23, 2025).

network and the highly sensitive personal information stored on its computer network in a data breach perpetrated by cybercriminals ("Data Breach"). Upon information and belief, the Data Breach has impacted 53,642 of Defendant's current and former students and employees.[2]

5. And yet, Defendant waited until December 19, 2025—an entire year after it discovered the Data Breach—to begin notifying victims that their information had been compromised in the Data Breach. A copy of Plaintiff Peterson's Breach Notice is attached as Exhibit A and a copy of Plaintiff Power's Breach Notice is attached as Exhibit B.

6. Through the Data Breach, cybercriminals gained unauthorized access to employees' and students' Private Information, including but not limited to their name, date of birth, Driver's license number, financial account information, health insurance information, medical information, passport information, Social Security number, student identification number, and tax identification number.[3]

7. Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the Private Information of Plaintiffs, and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information—rendering it an easy target for cybercriminals.

8. In failing to adequately protect its employees' and students' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its current and former employees and

---

[2] Data Breach Notifications, Office of the Maine Attorney General, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/9aac0b34-72bd-4e1b-9bda-e65388fd9173.html (last visited December 23, 2025).

[3] Notice of Data Security Incident, Baker University, https://www.bakeru.edu/wp-content/uploads/2025/12/Baker-Unviersity-Final-Website-Notice.pdf (last visited December 23, 2025).

students.

9. Plaintiffs and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiffs and members of the proposed Class trusted Defendant with their Private Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10. Plaintiffs are former students of Defendant and Data Breach victims.

11. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiffs and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

12. Plaintiff Madeline Peterson is a natural person and citizen of Overland Park, Kansas where she intends to remain.

13. Plaintiff Kurt Power is a natural person and citizen of Blue Springs, Missouri where he intends to remain.

14. Defendant, Baker University, is a Kansas not for-profit corporation with its principal place of business located at 618 Eighth Street, Baldwin City, Kansas 66006.

## JURISDICTION & VENUE

15. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant and at least one Class Member are citizens of different states. And there are over 100 putative Class members.

16. This Court has personal jurisdiction over Defendant because they are headquartered in Kansas, regularly conduct business in Kansas, and/or have sufficient minimum contacts in Kansas.

17. Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

***Baker***

18. Baker is a private university based in Kansas offering over 50 programs including bachelor's, master's and doctoral degrees and certificates.[4]

19. On information and belief, Baker accumulates highly sensitive Private Information of its current and former employees and students.

20. In collecting and maintaining its employees' and students' Private Information, Defendant agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their Private Information.

21. Baker understood the need to protect its current and former employees' and students' Private Information and prioritize its data security.

22. Indeed, Baker promises in its privacy policy that it "utilize[s] commercially reasonable data collection, storage and processing practices, and security measures to protect against unauthorized access, alteration, disclosure or destruction of your Personal Information in [its] possession."[5]

23. Despite recognizing its duty to do so, on information and belief, Baker has not implemented reasonably cybersecurity safeguards or policies to protect employees' and students' Private Information or trained its IT or data security employees to prevent, detect, and stop

---

[4] BAKER UNIVERSITY, https://www.bakeru.edu/ (last visited December 23, 2025).
[5] Privacy Policy, BAKER UNIVERSITY, https://www.bakeru.edu/privacy-policy/ (last visited December 23, 2025).

breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees' and students' Private Information.

***Baker Failed to Safeguard Employees' and Students' Private Information***

24. Plaintiffs are former students of Baker and data breach victims.

25. As a condition of receiving educational services with Baker, Plaintiffs provided Defendant with their Private Information. Defendant used that Private Information to facilitate its services to Plaintiffs, and required Plaintiffs to provide that Private Information to enroll at Baker.

26. On information and belief, Baker collects and maintains employees' and students' unencrypted Private Information in its computer systems.

27. In collecting and maintaining Private Information, Defendant implicitly agreed that it will safeguard the data using reasonable means according to state and federal law.

28. On information and belief, in December 2024, Defendant discovered that it had been subject to a Data Breach. Ex. A.

29. Defendant's investigation into the incident revealed that "there was unauthorized access and/or acquisition of certain files and folders within our network between December 2, 2024, and December 19, 2024." Ex. A.

30. Thus, during the eighteen-day Data Breach, cybercriminals were able to not only access Plaintiffs' and the Class's Private Information, but they were able to acquire and exfiltrate it from Defendant's systems.

31. Through the Data Breach, cybercriminals gained unauthorized access to employees' and students' Private Information, including but not limited to their name, date of birth, Driver's license number, financial account information, health insurance information, medical information, passport information, Social Security number, student identification number,

and tax identification number.[6]

32. In other words, Defendant's cyber and data security systems were completely inadequate in that it allowed cybercriminals to obtain files containing a treasure trove of thousands of its employees' and students' highly sensitive Private Information.

33. And yet, Defendant waited until December 19, 2025, to begin notifying victims that their Private Information had been compromised and stolen during the Data Breach—an entire year after the Data Breach was discovered.

34. Defendant represented in its Breach Notice that it "implemented additional measures to further protect against similar incidents moving forward." Ex. A. However, this is too little too late because these steps should have been taken before the Data Breach.

35. Defendant's Breach Noticed acknowledged the increased risk faced by victims of the Data Breach when it urged those affected to sign up for credit monitoring services and to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements, explanation of benefits, and monitoring your free credit reports for suspicious activity and to detect errors." Ex. A.

36. On information and belief, Baker has offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Private Information that cannot be changed, such as Social Security numbers.

37. Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' Private Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

[6] Notice of Data Security Incident, Baker University, https://www.bakeru.edu/wp-content/uploads/2025/12/Baker-Unviersity-Final-Website-Notice.pdf (last visited December 23, 2025).

38. Because of Baker's Data Breach, the sensitive Private Information of Plaintiffs and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiffs and Class Members.

39. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiffs' and the Class's Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

40. Ransomware groups can monetize stolen Private Information and sell it on the dark web as part of a full identity profile.[7] Buyers can then use that information to conduct different types of identity theft or fraud, such as filing a fake tax return, applying for a fraudulent mortgage or opening a bank account while impersonating the victim.[8]

41. And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[9]

42. Thus, on information and belief, Plaintiffs' and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

***The Data Breach was a Foreseeable Risk of Which Defendant was on Notice.***

43. It is well known that Private Information, including Social Security numbers, is an

---

[7] Anthony M. Freed, *Which Data Do Ransomware Attackers Target for Double Extortion?*, MALICIOUSLIFE BY CYBEREASON, https://www.cybereason.com/blog/which-data-do-ransomware-attackers-target-for-double-extortion (listed visited December 24, 2025).

[8] *Id*.

[9] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

invaluable commodity and a frequent target of hackers.

44. Indeed, in 2024, a 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[10]

45. In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

46. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[11]

47. Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

48. In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks, including

---

[10] *2024 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited December 24, 2025).

[11] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited December 24, 2025).

ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

49. In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[12]

50. In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[13]

51. This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

52. In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted Private Information of thousands of its current and former employes in an Internet-accessible environment, had reason to be on guard for the exfiltration of the Private Information and Defendant's type of business had

---

[12] Catalin Cimpanu, *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET (Apr. 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/.
[13] *Ransomware Guide*, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last visited December 24, 2025).

cause to be particularly on guard against such an attack.

53. Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiffs' and Class Members' Private Information could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

54. Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its employees' and students' Social Security numbers and other sensitive data elements within the Private Information to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff Madeline Peterson's Experience and Injuries***

55. Plaintiff Peterson was a student at Baker University between 2019 and 2023, and is a Data Breach victim.

56. As a condition of receiving educational services with Baker, Plaintiff Peterson provided Defendant with her Private Information. Defendant used that Private Information to facilitate its enrollment of Plaintiff, and required Plaintiff to provide that Private Information in order to enroll at Baker University.

57. Plaintiff Peterson provided her Private Information to Defendant and trusted that the university would use reasonable measures to protect it according to state and federal law.

58. On information and belief, Plaintiff Peterson's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

59. Defendant deprived Plaintiff Peterson of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her about the Breach.

60. Plaintiff Peterson does not recall ever learning that her Private Information was compromised in a data breach incident, other than the breach at issue in this case.

61. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff Peterson's Private Information for theft by cybercriminals and sale on the dark web.

62. Plaintiff Peterson suffered actual injury from the exposure of her Private Information —which violates her rights to privacy.

63. Plaintiff Peterson suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

64. As a result of the Data Breach, Plaintiff Peterson has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, calling the breach hotline, reviewing credit card and financial account statements, and monitoring Plaintiff's credit information.

65. Plaintiff Peterson has already spent and will continue to spend considerable time and effort monitoring her accounts to protect herself from identity theft.

66. Plaintiff Peterson fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

67. Plaintiff Peterson is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data

Breach in a timely fashion.

68. Following the Breach, Plaintiff Peterson began receiving an influx of spam phone calls and text messages. These spam calls and texts are evidence that her Private Information is now available for exploitation by cybercriminals.

69. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff Peterson's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[14] On information and belief, the spam calls and texts Plaintiff is experiencing is a result of the Data Breach.

70. Plaintiff Peterson has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff Kurt Power's Experience and Injuries***

71. Plaintiff Power was a student at Baker University between 2018 and 2024, and is a Data Breach victim.

72. As a condition of receiving educational services with Baker, Plaintiff Power provided Defendant with his Private Information. Defendant used that Private Information to facilitate its enrollment of Plaintiff, and required Plaintiff to provide that Private Information in order to enroll at Baker University.

73. Plaintiff Power provided his Private Information to Defendant and trusted that the university would use reasonable measures to protect it according to state and federal law.

74. On information and belief, Plaintiff Power's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

[14] Ryan Toohil, *What do Hackers do with Stolen Information*, AURA (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

75. Defendant deprived Plaintiff Power of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly notify him about the Breach.

76. Plaintiff Power does not recall ever learning that his Private Information was compromised in a data breach incident, other than the breach at issue in this case.

77. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff Power's Private Information for theft by cybercriminals and sale on the dark web.

78. Plaintiff Power suffered actual injury from the exposure of his Private Information —which violates his rights to privacy.

79. Plaintiff Power suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

80. As a result of the Data Breach, Plaintiff Power has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach and monitoring his credit information.

81. Plaintiff Power has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft.

82. Plaintiff Power fears for his personal financial security and uncertainty over what Private Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

83. Plaintiff Power is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized

third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

84. Following the Breach, Plaintiff Power was alerted on December 29, 2025, by Experian and Credit Karma that his information has been published on the dark web.

85. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff Power's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[15]

86. Plaintiff Power has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

87. Plaintiffs and members of the proposed Class have suffered injury from the misuse of their Private Information that can be directly traced to Defendant.

88. As a result of Defendant's failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiffs and the class have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Private Information is used;

b. The diminution in value of their Private Information;

c. The compromise and continuing publication of their Private Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

[15] Ryan Toohil, *What do Hackers do with Stolen Information*, AURA (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Private Information; and

h. The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in its possession.

89. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained.

90. The value of Plaintiffs' and the proposed Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

91. Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

92. It can take victims years to spot identity or Private Information theft, giving

criminals plenty of time to use that information for cash.

93. One such example of criminals using Private Information for profit is the development of "Fullz" packages.

94. Cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

95. The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs' and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and members of the Class's stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

96. Defendant disclosed the Private Information of Plaintiffs and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Private Information of Plaintiffs and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

97. Defendant's failure to properly notify Plaintiffs and the Class of the Data Breach exacerbated Plaintiffs' and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Consumers Prioritize Data Security***

98. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[16] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[17]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[18]

c. 89% of consumers stated that "I care about data privacy."[19]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[20]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[21]

---

[16] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited December 24, 2025).
[17] *Id*. at 3.
[18] *Id*.
[19] *Id*. at 9.
[20] *Id*.
[21] *Id*.

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[22]

99. Defendant knew or should have known that adequate implementation of cybersecurity and protection of Private Information, including Plaintiffs and the Class's Private Information, was important to its employees and students.

***Defendant failed to adhere to FTC guidelines.***

100. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

101. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

102. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

103. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords

[22] *Id*. at 11.

to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

104. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

105. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' and students' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

106. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep individuals' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [23]

107. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Private Information and PHI is properly maintained.[24]

---

[23] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[24] See 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

108. The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their

functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

109. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Defendant Failed to Follow Industry Standards***

110. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

111. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

112. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and

RS.CO-04).

113. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

**CLASS ACTION ALLEGATIONS**

114. Plaintiffs bring this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following Nationwide Class:

> All individuals residing in the United States whose Private Information was compromised in the Data Breach discovered by Baker University in December 2024, including all those individuals who received notice of the breach.

115. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

116. Plaintiffs reserve the right to amend the class definition.

117. Plaintiff reserves the right to amend the class definition.

118. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

119. Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

120. Numerosity. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes approximately 53,624

individuals.

121. Typicality. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

122. Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

123. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant was negligent in maintaining, protecting, and securing Private Information;

d. if Defendant breached contract promises to safeguard Plaintiff and the Class's Private Information;

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. if Defendant's Breach Notice was reasonable;

g. if the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

124. Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

125. Plaintiffs hereby repeat and reallege paragraphs 1 through 124 of this Petition and incorporate them by reference herein.

126. Plaintiffs and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information

to unauthorized third parties.

127. Defendant owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

128. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if their Private Information was wrongfully disclosed.

129. Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiffs and Class Members' Private Information.

130. Defendant owed—to Plaintiffs and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Private Information in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiffs and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

131. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiffs and

Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

132. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

133. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

134. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant.

135. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiffs and Class Members would not have been injured.

136. The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

137. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Private

Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise.

138. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiffs and Class Members' and the importance of exercising reasonable care in handling it.

139. Defendant improperly and inadequately safeguarded the Private Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

140. Defendant breached these duties as evidenced by the Data Breach.

141. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' Private Information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

142. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs and Class Members' injury.

143. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs and Class Members' injuries-in-fact.

144. Defendant has admitted that the Private Information of Plaintiffs and the Class was

wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

145. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

146. And, on information and belief, Plaintiffs' Private Information has already been published—or will be published imminently—by the Brain Cipher cybercriminal group or other cybercriminals on the dark web.

147. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
**Negligence *per se***
**(On Behalf of Plaintiffs and the Class)**

148. Plaintiffs hereby repeat and reallege paragraphs 1 through 124 of this Petition and incorporate them by reference herein.

149. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

150. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs and the Class Members' sensitive Private Information.

151. Defendant breached its respective duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

152. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

153. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

154. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiffs and Class Members would not have been injured.

155. The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant were failing to meet its duties and that its breach would cause Plaintiffs and

members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

156. Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiffs' and Class Members' PHI.

157. Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of PHI that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

158. Defendant's various violations and its failure to comply with applicable laws and regulations constitute negligence *per se*.

159. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Negligence *per se***
**For Violation of Kansas' Chapter 50 Unfair Trade and Consumer Protection, Article 7a Protection of Consumer Information, K.S.A. 50–7a01, *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

160. Plaintiffs hereby repeat and reallege paragraphs 1 through 124 of this Petition and incorporate them by reference herein.

161. Defendant is a business entity that maintains, stores, or manages computerized data that includes personal information as defined by K.S.A. 50–7a01(f).

162. Plaintiffs' and members of the Class's Private Information includes "personal information" as defined by K.S.A. 50–7a01(g).

163. Defendant was aware of a breach of its computer system that it believed or reasonably should have believed had caused or would cause loss or injury to residents of Kansas.

164. Defendant had an obligation to disclose the Data Breach to Plaintiffs and members of the Class "in the most expedient time possible and without unreasonable delay," as mandated by K.S.A. 50–7a02(a).

165. Defendant's failure to disclose the Data Breach in a timely manner as required by K.S.A. 50–7a02(a) constitutes negligence *per se*.

166. As a direct and proximate cause of Defendant's negligence in failing to comply with by K.S.A. 50–7a02, Plaintiffs and members of the Class sustained actual losses and damages as described herein.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

167. Plaintiffs hereby repeat and reallege paragraphs 1 through 124 of this Petition and incorporate them by reference herein.

168. Plaintiffs and Class Members were required to provide their Private Information to Defendant as a condition of receiving services and/or employment provided by Defendant. Plaintiffs and Class Members provided their Private Information to Defendant in exchange for Defendant's services.

169. Plaintiffs and Class Members reasonably understood that a portion of the funds they paid for tuition and/or a portion of the funds generated by their employment would be used to pay for adequate cybersecurity measures.

170. Plaintiffs and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they or their third party

agents were required to provide based on Defendant's duties under state and federal law and its internal policies.

171. Plaintiffs and the Class Members accepted Defendant's offers by disclosing their Private Information to Defendant in exchange for services and/or employment.

172. In turn, and through internal policies, Defendant agreed to protect and not disclose the Private Information to unauthorized persons.

173. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiffs' and Class Member's Private Information.

174. Implicit in the parties' agreement was that Defendant would provide Plaintiffs and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

175. After all, Plaintiffs and Class Members would not have entrusted their Private Information to Defendant in the absence of such an agreement with Defendant.

176. Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

177. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

178. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair

dealing may require more than honesty.

179. Defendant materially breached the contracts it entered with Plaintiffs and Class Members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Private Information that Defendant created, received, maintained, and transmitted.

180. In these and other ways, Defendant violated its duty of good faith and fair dealing.

181. Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed *supra*).

182. And, on information and belief, Plaintiffs' Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

183. Plaintiffs and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

184. Plaintiffs hereby repeat and reallege paragraphs 1 through 124 of this Petition and incorporate them by reference herein.

185. This claim is pleaded in the alternative to the breach of implied contract claim.

186. Plaintiffs and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted from (1) using their Private Information to provide services, and (2) accepting payment.

187. Defendant appreciated or had knowledge of the benefits it received from Plaintiffs and Class Members.

188. Plaintiffs and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

189. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information.

190. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

191. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and Class Members' (1) Private Information and (2) payment because Defendant failed to adequately protect their Private Information.

192. Plaintiffs and Class Members have no adequate remedy at law.

193. Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiffs and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

## SIXTH CAUSE OF ACTION
**Breach of Fiduciary Duty**

**(On Behalf of Plaintiffs and the Class)**

194. Plaintiffs hereby repeat and reallege paragraphs 1 through 124 of this Petition and incorporate them by reference herein.

195. Given the relationship between Defendant and Plaintiffs and Class Members, where Defendant became guardian of Plaintiffs' and Class Members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs and Class Members' Private Information; (2) to timely notify Plaintiffs and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

196. Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of Defendant's relationship with them—especially to secure their Private Information.

197. Because of the highly sensitive nature of the Private Information, Plaintiffs and Class Members would not have entrusted Defendant, or anyone in Defendant's position, to retain their Private Information had they known the reality of Defendant's inadequate data security practices.

198. Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiffs' and Class Members' Private Information.

199. Defendant also breached its fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

200. As a direct and proximate result of Defendant's breach of its fiduciary duties,

Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**SEVENTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiffs and the Class)**

201. Plaintiffs hereby repeat and reallege paragraphs 1 through 124 of this Petition and incorporate them by reference herein.

202. Plaintiffs and Class Members had a legitimate expectation of privacy regarding their Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

203. Specifically, Plaintiffs and Class Members had a reasonable expectation of privacy given Defendant' representations and Privacy Policy. Defendant's disclosure of Plaintiffs' Private Information is highly offensive to the reasonable person.

204. Defendant owed a duty to Plaintiffs and Class Member to keep their Private Information confidential.

205. The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiffs' and Class Members' Private Information, is highly offensive to a reasonable person. It constitute an invasion of privacy both by disclosure of nonpublic facts, and intrusion upon seclusion.

206. Defendant's reckless and negligent failure to protect Plaintiffs' and Class Members' Private Information constitutes an intentional interference with Plaintiffs' and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

207. Defendant's failure to protect Plaintiffs' and Class Members' Private Information acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

208. Defendant knowingly did not notify Plaintiffs' and Class Members in a timely fashion about the Data Breach.

209. Because Defendant failed to properly safeguard Plaintiffs' and Class Members' Private Information, Defendant had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

210. As a proximate result of Defendant's acts and omissions, the Private Information of Plaintiffs and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages.

211. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their Private Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

212. Plaintiffs and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their Private Information. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiffs and the Class.

213. Plaintiffs and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiffs' and Class Members' Private Information.

214. Plaintiffs and Class Members seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the

costs of monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## PRAYER FOR RELIEF

Plaintiffs and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Private Information;

E. Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs hereby demand that this matter be tried before a jury.

Dated: January 22, 2026

Respectfully Submitted,

By: /s/Maureen M. Brady

Maureen M. Brady KS #22460
Lucy McShane KS #22517
MCSHANE & BRADY, LLC
4006 Central Street
Kansas City, MO 64111
Telephone: (816) 888-8010
Facsimile: (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
lmcshane@mcshanebradylaw.com

Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com

* *Pro hac vice forthcoming*

*Attorneys for Plaintiffs and Proposed Class*